IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LORI ATWOOD, | |
| Plaintiff, | **8:21CV394** |
| vs. | |
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation; | **MEMORANDUM AND ORDER** |
| Defendant. | |

Defendant Union Pacific (UPRR) has moved for a protective order, asking the court to strike Plaintiff's Rule 30(b)(6) notice of deposition. (Filing No. 30). UPRR argues: 1) the 30(b)(6) notice seeks attorney client privileged and work product information, and 2) compliance would be duplicative and unduly burdensome because UPRR already answered the contention topics listed in the Rule 30(b)(6) notice in responses to Interrogatory No. 15. Plaintiff opposes the motion, arguing a 30(b)(6) deposition would bind UPRR and assure it cannot raise new facts and theories at trial. (Filing No. 39, at CM/ECF p. 8).

UPRR's supplemental response to Interrogatory No. 15 was discussed in both parties' briefing, but it was not filed of record. So, the court ordered UPRR to file the supplemental interrogatory response. (Filing No. 49). UPRR promptly did so. (Filing No. 50). Plaintiff now moves to strike UPRR's "Undisclosed Evidence Proffered in Support of UP's Motion for Protective Order," claiming the supplement was not served in a timely manner as required under Rule 26(e). (Filing No. 51).

For the reasons stated below, UPRR's motion for protective order will be granted, and Plaintiff's motion to strike will be denied.

BACKGROUND

Plaintiff's complaint alleges she was injured on December 4, 2020, while working in the course and scope of her regular employment for UPRR near Parsons, Kansas. (Filing No. 1). As part of her duties for the railroad, Plaintiff was required to line or connect air hoses between railcars. She alleges that on December 4, 2020, she radioed that she was going to Track 8 to line air hoses, and then went between two lumber cars to connect the air hoses. She claims that while performing this task, a cut of cars was sent down Track 8 and impacted the train she was building. She alleges one of the lumber cars lunged forward and struck her, causing injuries.

Plaintiff claims the railroad failed to provide her with a reasonably safe place to work in violation of 45 U.S.C. § 51. Specifically, Plaintiff alleges the railroad negligently failed to adequately protect Plaintiff from the movement of railcars by failing to alert her to the proximity of the railcars or warn her that a collision was imminent, failing to conduct a proper job briefing before sending a cut of cars down Track 8, failing to properly supervise the work assigned to her, and/or failing to properly supervise the movement of cars in UPRR's yard. Plaintiff also claims UPRR is strictly liable for Plaintiff's injuries because its acts and omissions violated one or more safety rules, regulations, and statutes.

On October 29, 2021, Defendant filed an Answer listing "Affirmative Defenses. (Filing No. 6).  An Amended Answer, filed on November 2, 2022,

2

deleted two defenses, and it renumbered the paragraphs of affirmative defenses.[1] ([Filing No. 36](#)).

## WRITTEN DISCOVERY

After the court entered a Case Progression Order, Plaintiff served the following interrogatory on UPRR.[2]

Interrogatory No. 15: State in detail all facts supporting each and every affirmative defense asserted by Defendant and identify all witnesses and documents that support each affirmative defense. State in detail the knowledge believed to be known by each witness.

([Filing No. 40-1, at CM/ECF p. 13](#)).

As relevant to the pending motion, the defenses fall into four categories: contributory negligence allegations, failure to mitigate, preexisting conditions and apportionment, and claims that UPRR provided a reasonably safe place to work and its negligence did not cause or contribute to Plaintiff's injuries.[3] UPRR answered Interrogatory No. 15, initially on March 24, 2022, and with a supplemental response served on October 24, 2022. The following describes the defenses raised and UPRR's corresponding interrogatory responses.

---

[1]After moving for a protective order, UPRR conferred with Plaintiff's counsel. UPRR then filed an Amended Answer which withdrew Paragraphs 1 and 13 of the defenses mentioned in its original Answer and renumbered those defenses. ([Filing No. 35](#)). Plaintiff agreed to withdraw any 30(b)(6) deposition topic related to any defense withdrawn by UPRR. ([Filing No. 40, at CM/ECF p. 3](#)).

[2] The date of service is not reflected in the record. Plaintiff is advised to comply with the certificate of service filing requirements as stated in, e.g., Nebraska Civil Rules 26.1(a), 33.1(e), 34.1(e), and 36.1(c).

[3] Although listed under the title "Affirmative Defenses," defenses asserting Plaintiff cannot prove the essential elements of her FELA claim are not affirmative defenses.

A. Contributory Negligence

UPRR alleges Plaintiff was negligent and caused, in whole or in part, her accident and the resulting injuries; specifically,

- Plaintiff's injuries and damages may have been caused by Plaintiff's sole negligence, thereby reducing or eliminating any recovery; (Filing No. 36, at CM/ECF p. 2, Affirmative Defenses ¶ 2); and

- The cause of Plaintiff's damages, if any, may have been Plaintiff's comparative or contributory negligence, which reduces the potential recovery as provided in 45 U.S.C. § 53. Id. at ¶ 3.

As to UPRR's contributory negligence allegations, UPRR's initial response to Interrogatory No. 15 states:

Plaintiff had performed switching operations on numerous occasions and was familiar with the job tasks. Plaintiff knew that Union Pacific Safety Rule 81.5.4 prohibited her from going in the foul of Track 8 without establishing red zone protection. At a minimum, Safety Rule 81.5.4 prohibited Plaintiff from going foul of Track 8 without first communicating with her crew members to determine that no additional cars would be kicked into Track 8. Further, Plaintiff violated Safety Rule 81.13.7 by failing to communicate with her crew members prior to lacing air hoses about the work to be performed. Plaintiff also violated Safety Rule 70.3 by failing to job brief with the crew before deciding to go foul of Track 8 while switching operations were still underway. Plaintiff violated GCOR 1.1.2 for attempting to lace air hoses while switching operations were ongoing and for failing to be alert and attentive to the crew's next moves. Evidence in support of Plaintiff's negligence includes yard camera (UP-ATWOOD 002220); Union Pacific Safety Rules (UP-ATWOOD 000501-000720); Union Pacific General Code of Operating Rules (UP-

ATWOOD 000259-000500); Trainman job description (UP-ATWOOD 002781-002783); and Parsons Yard map (UP-ATWOOD 002219).

([Filing No. 40-1, at CM/ECF pp. 13-14]).

UPRR's supplemental response:

- adds Bates-stamp document references as support for four of the statements in the March 24, 2022 response;

- states it will rely primarily upon the expert opinions of Foster Peterson, and the bases therefore, as expressed in his report;

- lists additional documents (by Bates-stamp numbers), including: handwritten statements of fact witnesses; the deposition testimony of Plaintiff, fact witnesses, and expert witnesses; text messages; Plaintiff's training and testing records; and Foster Peterson's expert report, along with the exhibits, attachments, documents, and evidence referenced therein; and

- the names of fact and expert witnesses.[4]

([Filing No. 50, at CM/ECF pp. 16-18]).

B. Failure to Mitigate

UPRR alleges Plaintiff failed to mitigate his damages, ([Filing No. 36, at CM/ECF p. 3], Affirmative Defenses ¶ 5).

---

[4] UPRR further explains "the testimony Nathan Zimmerman, a non-retained expert witness, will give at trial is summarized in Union Pacific's expert disclosure dated July 7, 2022. The testimony Foster Peterson will give at trial is summarized in his expert report dated July 7, 2022 and attached as Exhibit "A" to Union Pacific's Expert Disclosures dated July 7, 2022."

As to this defense, UPRR's initial answer to Interrogatory No. 15 states:

Vocational rehabilitation and return to work issues will be the subject of expert testimony and will be disclosed according to the deadlines set by the court. To Union Pacific's knowledge, Plaintiff has not yet been placed at maximum medical improvement. It remains to be seen what actions Plaintiff will or will not take to fulfill her duty to mitigate her damages.

(Filing No. 40-1, at CM/ECF p. 14).

UPRR supplemented this response, stating it would rely primarily on the opinions of its vocational expert, and the bases therefore, expressed in her report. UPRR explains:

Plaintiff has a duty to mitigate her damages by doing what she can do, when she is capable of doing it, to mitigate wage loss allegedly arising from the on-duty incident. Plaintiff has produced no evidence showing that she has made any effort to mitigate her damages by engaging in any type of vocational rehabilitation, including the vocational rehabilitation services available through Union Pacific, by seeking any type of employment, or by returning to any type of work. If Plaintiff loses her connection with Union Pacific through failure to provide documentation supporting her medical leave of absence, Plaintiff may increase her damages. Union Pacific has not yet formed an opinion as to the precise amount of Plaintiff's residual earning capacity because she has not reached maximum medical improvement. However, Plaintiff has the capacity at least to earn a minimum wage.

(Filing No. 50, (Filing No. 18).

UPRR states medical comments (referenced by Bates-stamp number) within Plaintiff's medical records support the failure to mitigate defense. It

identifies medical experts, its vocational expert, and its non-retained expert, a Union Pacific vocational counselor, as witnesses supporting the failure to mitigate defense. The interrogatory response states the anticipated testimony of the retained experts is "summarized in their expert reports, and the documents, exhibits, and deposition testimony they rely upon," all of which were previously disclosed to Plaintiff. As to the non-retained expert, the railroad states her anticipated trial testimony is summarized in UPRR's expert disclosures. (Filing No. 50, (Filing No. 18).

C. Preexisting Conditions and Apportionment of Damages

UPRR's answer alleges Plaintiff's injuries and damages were, in whole or in part, preexisting, caused by factors other than the accident at issue, and Union Pacific is either not responsible for those preexisting injuries or is entitled to an apportionment of damages. (Filing No. 36, at CM/ECF p. 4, Affirmative Defenses ¶ 12).

As to this defense, UPRR initially responded to Interrogatory No. 15 by stating "this interrogatory remains premature. The issue of pre-existing medical conditions will be the subject of expert testimony. Union Pacific anticipates designating an expert according to the deadlines set by the court." (Filing No. 40-1, at CM/ECF p. 15).

UPRR's supplemental response states:

[T]he only knowledge Union Pacific has concerning Plaintiff's pre-existing conditions comes from its medical experts. While Union Pacific employs a small number of medical personnel, those individuals have not reviewed Plaintiff's medical condition since the work accident. Therefore, Union Pacific relies solely on its medical

7

experts to support its affirmative defense that some of the damages claimed by Plaintiff in this case arise from pre-existing conditions and were not caused by the work accident. Specifically, Union Pacific relies on the expert opinions of Dr. Michael Johnson, Dr. M. Sean Green, and Christine Durrett. Their opinions are expressed in their respective reports (see Union Pacific's Supplemental Expert Disclosures dated August 8, 2022 and UP-ATWOOD 006239-006307). In addition, their reports identify the information, documents, and testimony they rely upon to support their opinions. Union Pacific has produced those documents and records. In _addition_ to the testimony of these experts, Union Pacific also relies upon Plaintiff's testimony to support this affirmative defense.

(Filing No. 50, at CM/ECF p. 21).

D. FELA Breach of Duty and Causation

UPRR alleges it was not negligent and/or that its alleged negligence did not cause to contribute to Plaintiff's alleged injuries. Specifically, UPRR alleges:

- Plaintiff's alleged injuries and damages, if any, were not caused by any alleged act or omission of Defendant, its agents, or its employees, (Filing No. 36, at CM/ECF p. 2, Affirmative Defenses ¶ 1);

- Plaintiff's damages, if any, were the result of unforeseeable circumstances that could not have been reasonably anticipated by Union Pacific or the result of causes, conditions or other factors that Union Pacific did not cause or contribute to, and Union Pacific is therefore not legally responsible for Plaintiff's damages, (Filing No. 36, at CM/ECF pp. 2-3, Affirmative Defenses ¶ 4); and

- Union Pacific made reasonable efforts to provide to Plaintiff reasonably safe working conditions, reasonably safe tools and equipment, and

8

reasonably safe training, supervision, work procedures, and practices. (Filing No. 36, at CM/ECF p. 3, Affirmative Defenses ¶¶ 6-8).

As to defenses stating the railroad provided a reasonably safe place to work, UPRR provided the following initial response to Interrogatory No. 15.

> Union Pacific states it performs regular inspections of its yard tracks in accordance with federal regulations, and such inspections are documented in the track inspection report from December 4, 2019 through December 4, 2021 (UP-ATWOOD 002225-002269) previously produced. Further, see the maintenance and inspection reports from December 4, 2019 through December 4, 2020 for railcars TCMZ 45034 (UP-ATWOOD 002906) and TTZX 856113 (UP-ATWOOD 002960), and additional maintenance and inspection reports for TCMZ 45034 (UP-ATWOOD 002968) and TTZX 856113 (UP-ATWOOD 002969) from December 4, 2020 through December 4, 2021, which are believed by Union Pacific to be the railcars on which Plaintiff was working at the time of the subject incident. Additionally, Union Pacific has implemented numerous rules for the safety of its employees. On the date of the subject incident, Plaintiff was, and is, an experienced employee who has performed switching operations on numerous occasions and was familiar with the job tasks. Plaintiff's injury was not caused by unsafe working conditions, but her failure to adhere to these rules, specifically Safety Rule 81.5.4 - Establishing Protection Before Crossing Through or Fouling Equipment; Safety Rule 81.13.7 - Coupling and Uncoupling Hoses; Safety Rule 70.3 - Job Briefing; and GCOR 1.1.2 Alert and Attentive.

(Filing No. 40-1, at CM/ECF pp. 14-15).

UPRR's supplemental response:

- adds Bates-stamp document references for the Safety Rules cited in the initial response;

9

- states it will rely primarily upon the expert opinions of Foster Peterson, and the bases therefore, as expressed in his report;

- lists additional documents (by Bates-stamped number), including: yard camera footage; the General Code of Operating Rules; a map of the Parsons Yard; handwritten statements of fact witnesses; deposition testimony of Plaintiff, fact witnesses, and expert witnesses; text messages; Plaintiff's training and testing records; Foster Peterson's expert report and the exhibits, attachments, documents, and evidence referenced therein; and

- lists the names of fact and expert witnesses.[5]

(Filing No. 50, at CM/ECF pp. 50-51).


ANALYSIS


On October 14, 2022, Plaintiff served a 30(b)(6) notice on UPRR, asking the railroad to provide a corporate witness for testimony which will identify "all facts, witnesses, or documents" the railroad will use to prove each of the foregoing defenses. UPRR moves for a protective order, "seeking protection from annoyance, oppression, and undue burden and expense related to Plaintiff's Notice, which is overbroad, unduly burdensome, duplicative, not proportional to the needs of the case, and which seeks information protected by the attorney work product privilege." (Filing No. 30, at CM/ECF p. 8).

---

[5] UPRR further states: "The testimony Nathan Zimmerman, a non-retained expert witness, will give at trial is summarized in Union Pacific's expert disclosure dated July 7, 2022. The testimony Foster Peterson will give at trial is summarized in his expert report dated July 7, 2022 and attached as Exhibit "A" to Union Pacific's Expert Disclosures dated July 7, 2022."

Plaintiff argues the court cannot consider UPRR's supplemental response to Interrogatory No. 15 because the response was not timely supplemented as required under Rule 26(e) of the Federal Rules of Civil Procedure. Plaintiff argues "UP may not use its purported supplemental interrogatory response to supply evidence on its pending Motion for Protective Order, and the Court must strike the supplemental answer to [the] interrogatory." (Filing No. 51, at CM/ECF p. 3).

A. Motion to Strike Supplemental Response to Interrogatory No. 15

UPRR's brief described the supplemental response to Interrogatory No. 15, stating it supplemented the interrogatory response on October 24, 2022, and it has provided a complete answer to Interrogatory No. 15. (Filing No. 31, at CM/ECF p. 8). But UPRR did not file a copy of its October 24, 2022 interrogatory response as evidence.

Plaintiff's brief also mentions the supplemental interrogatory response served on October 24, 2022. Plaintiff argues the railroad's supplemental response was served when the motion for protective order was filed and identified witnesses and documents that could have been disclosed earlier. Citing the supplemental response, Plaintiff argues the railroad "apparently has plans of ambushing Plaintiff at trial." Id. Plaintiff also failed to file the October 24, 2022 response to Interrogatory No. 15 as evidence for the court's review.

Since both parties were asserting arguments based on a document that was not filed of record, the court ordered UPRR to file the October 24, 2022 response to Interrogatory No. 15.[6]

---

[6] In other words, the court entered an order requiring compliance with this court's local rules. See NECivR 7.1(a)(2)(A) ("If a motion requires the court to consider any factual

Interrogatories that ask another party to disclose what it contends, to state all the facts on which it bases its contentions, and to identify all the evidence supporting those contentions are often referred to as "contention interrogatories." In re Grand Casinos, Inc., Sec. Litig., 181 F.R.D. 615, 618 (D.Minn.1998). Plaintiff's Interrogatory No. 15, which asks the railroad to disclose "in detail all facts supporting each and every affirmative defense asserted by Defendant and identify all witnesses and documents that support each affirmative defense," (Filing No. 50, at CM/ECF p.13), is a contention interrogatory.

After reviewing UPRR's supplemental response to Interrogatory No. 15, the court finds that none of the facts, witnesses, or documents described in that response were new disclosures. The fact witnesses have been deposed, the experts' reports have been disclosed, and the documents the railroad will rely on were previously produced.

Citing Rule 26(e), Plaintiff argues UPRR's supplemental response was not timely and must therefore be stricken. However, the federal discovery rules also contemplate that under certain circumstances, the court "may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2). Based on this rule and federal case law dating back to at least 1985, "it is generally accepted that courts '[will] not order responses to contention interrogatories until late in the pretrial period' and that 'the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period.' " Open Text Inc v. Northwell Health, Inc., No. CV 19-9216

---

matters not stated in the pleadings, when filing the supporting brief, the moving party must also file and serve supporting evidentiary materials not previously filed."); NECivR 7.1(b)(2)(A) ("When filing the opposing brief, the opposing party must also file and serve supporting evidentiary material not previously filed.").

FMO (ASX), 2020 WL 6050595, at *4 (C.D. Cal. Aug. 6, 2020) (quoting In re Convergent Techs. Sec. Litig., 108 F.R.D. 328, 336 (N.D. Cal. 1985)); See also, Core Optical Techs. v. Infinera Corp., No. SACV 17-0548, 2018 WL 2684693, at *2 (C.D. Cal. Mar. 7, 2018) ("It is generally the case that contention interrogatories need not be answered until discovery is substantially complete."); Harvey v. Circle, No. 4:19-CV-902-NAB, 2020 WL 4472999, at *5 (E.D. Mo. Aug. 4, 2020) ("[C]ontention interrogatories need not be answered until discovery is complete or nearly complete in accordance with Fed.R.Civ.P. 33(a)(2)."); Scholz Design Texas, LLC v. Lampert Yards - US LBM, LLC, No. 18-CV-4074-CJW, 2019 WL 13216582, at *5 (N.D. Iowa Sept. 4, 2019) ("[C]ontention interrogatories need not be answered until discovery is complete or nearing completion."); United States v. Berkeley Heartlab, Inc., No. 9:11-CV-1593-RMG, 2017 WL 11673301, at *2 (D.S.C. Apr. 3, 2017) (holding contention interrogatories need not be immediately answered when the answers necessarily require the expert opinions detailing the factual basis of the allegations). "Courts have considerable discretion in determining when contention interrogatories must be answered, and there is considerable support for deferring answers to contention interrogatories until after a substantial amount of discovery has been completed." Vishay Dale Elecs., Inc. v. Cyntec Co., No. 8:07CV191, 2008 WL 4868772, at *5 (D. Neb. Nov. 6, 2008) (denying a motion to compel answers to contention interrogatories until the end of discovery).

The deposition deadline for this case was November 1, 2022. (Filing No. 14). UPRR supplemented its response to Interrogatory No. 15 before that date. (Filing No. 50). The court has not yet scheduled the pretrial conference due to this pending motion for protective order, and Plaintiff's pending motion for partial summary judgment (Filing No. 46), and Daubert motion (Filing No. 42), neither of which are fully submitted.

As the party who served contention interrogatories, Plaintiff bears the burden of proving UPRR needed to supplement Interrogatory No. 15 prior to the discovery deadline to further the goals of discovery. Vishay Dale Elecs., Inc., 2008 WL 4868772, at *5 (citing B. Braun Medical Inc. v. Abbott Laboratories, 155 F.R.D. 525, 527 (E.D. Pa. 1994)); Zubrod v. Hoch, 2016 WL 1752770 (N.D. Iowa 2016). Here, upon review of the supplemental response itself, it is apparent that UPRR prepared its October 24, 2022 answer to Interrogatory No. 15 by reviewing previously exchanged discovery for this case, sorting that discovery by defense topic (including citing to specific pages of documents produced), and then disclosing the topical listing of witnesses and documents in an interrogatory answer. Upon comparing the initial and supplemental responses to Interrogatory No. 15, as to those contention interrogatory topics the railroad could answer, at least in part, at the outset of the case—primarily the FELA liability and contributory negligence defenses—the railroad's allegations were stated in the initial answer to Interrogatory No. 15, and they remained substantially the same in the supplemental answer. UPRR did not disclose new allegations of contributory negligence, and it did not raise new statements refuting the elements of Plaintiff's case. While UPRR's initial answer to Interrogatory No. 15 did not describe the factual basis of its failure to mitigate and preexisting condition/apportionment defenses, the facts underlying those defenses (Plaintiff's after-accident efforts to find employment and her underlying medical conditions) were not and could not be fully known by the railroad without first doing fact and expert witness discovery. With that discovery now substantially complete, UPRR supplemented its response to Interrogatory No. 15.

Under the circumstances presented, UPRR timely supplemented its response to Interrogatory No. 15 (dated October 24, 2022) as required under Rule 26(e)(1)(A). The supplemental response will not be stricken, and it will be considered in determining the merits of Defendant's Motion for Protective Order.

14

B. Motion for Protective Order

1)    Standard

District courts have broad discretion to limit discovery and decide discovery motions, (Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc., 237 F.R.D. 215, 218 (D. Neb. 2006), citing Pavlik v. Cargill, Inc., 9 F.3d 710, 714 (8th Cir.1993)), and a magistrate judge is afforded broad discretion in the resolution of nondispositive discovery disputes. Vishay Dale Elecs., Inc., 2008 WL 5396675, at *1. Discovery rules must be construed to secure the just, speedy, and inexpensive determination of every action, (Fed. R. Civ. P. 1), and to that end, judges must not hesitate to exercise appropriate control over the discovery process. Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F.3d 922, 927 (8th Cir.1999) (quoting Herbert v. Lando, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) and Fed. R. Civ. P. 1).

Rule 26 of the Federal Rule of Civil Procedure defines the scope of discovery as "any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." Discovery that is unreasonably burdensome, cumulative, or outside the scope permitted by Rule 26(b)(1) should be limited by the court. See, Fed. R. Civ. P. 26(b)(2)(C). Rule 26(c) permits a party to request an order protecting "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The court "must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(c)(i).

2)    Plaintiff's 30(b)(6) Notice

Plaintiff's 30(b)(6) notice asks UPRR to prepare a corporate witness who will provide testimony identifying "all facts, witnesses, or documents" the railroad will use to prove each of the defenses in its answer. UPRR argues the Rule 30(b)(6) notice is improper, overly broad, unduly burdensome, and duplicative of its responses to Interrogatory No. 15, and it argues Plaintiff's 30(b)(6) questioning will seek attorney-client and work product privileged information. (Filing No. 31, at CM/ECF p. 2). As to contention 30(b)(6) topics, the court must consider: "1) whether the attorney-client privilege or work product doctrine prevents the witness from answering questions regarding facts supporting the parties' contentions or affirmative defenses, and (2) if not, whether a Rule 30(b)(6) deposition is an overly burdensome method of acquiring this information, or whether less burdensome methods exist." Arctic Cat, Inc. v. Bombardier Recreational Products, Inc., 2014 WL 12610146, at *6 (D. Minn. 2014).

a)    Attorney-Client Privilege and Work Product Doctrine

The parties agree that the attorney client privilege or work product doctrine do not provide a basis for nondisclosure of relevant facts. They disagree on whether responding to Plaintiff's Rule 30(b)(6) notice topics, as drafted, would divulge UP's attorney client or work product information. A lawyer's thought processes and organization of evidence for trial is work product—whether requested directly from UPRR's lawyer or through the conduit of a 30(b)(6) witness. When asked to explain all facts supporting a defense or claim, the 30(b)(6) designee's deposition testimony reveals which facts opposing counsel found important, counsel's mental impressions, and counsel's conclusions or

opinions about those facts. Fairview Health Services v. Quest Software Inc., 2021 WL 5087564, at *7, (D. Minn. 2021).

Plaintiff argues there is no basis to distinguish contention interrogatories—which are permissible—from contention questions posed during a Rule 30(b)(6) deposition, and she is entitled to pursue these lines of questioning by deposing a UPRR 30(b)(6) witness. But "questions regarding a party's legal contentions at a Rule 30(b)(6) deposition do differ from contention interrogatories." Funk v. Pinnacle Health Facilities XXXII, LP, No. 17-1099-JTM-KGG, 2019 WL 858718, at *3 (D. Kan. Feb. 22, 2019) (emphasis in original). "Interrogatories that inquire as to legal contentions may be appropriate because they are answered by a party and/or its representatives with the assistance of legal counsel. Deposition inquiries, on the other hand, are the direct answer of a party, or in this case, its 30(b)(6) representative." Id. It is improper to directly question a lay witness regarding a party's legal contentions. Id. See also, Blackmore v. Union Pac. R.R. Co., No. 8:21CV318, 2022 WL 3718115, at *8 (D. Neb. Aug. 29, 2022);[7] Tapia v. TA Operating, LLC, No. CV 21-579 WJ/SCY, 2022 WL 1604673, at *3 (D.N.M. May 20, 2022); Puskarich BNSF Co. v. Graham-white Mfg. Co., No. 19-CV-150-F, 2022 WL 611276, at *6 (D. Wyo. Feb. 22, 2022) ("Questioning a lay witness about legal conclusion surrounding asserted affirmative defenses is improper.").

UPRR's Rule 30(b)(6) designee cannot know all the facts UPRR will advance as supporting its defenses without receiving the deposition response from the railroad's counsel. Where facts unknown to the corporation are accumulated during the discovery process, the lawyer would have to explain to the 30(b)(6) witness the information accumulated during post-litigation

---

[7] The Blackmore opinion was entered less than three months ago by the undersigned magistrate judge. The Plaintiff was represented by the same Plaintiff's counsel, the defendant was UPRR, and the parties raised nearly identical Rule 30(b)(6) arguments. Yet, in this case, neither party's brief cites the Blackmore decision.

discovery—including any expert opinions—and how that information supports the railroad's defenses. The witness would then have to repeat the information received from UPRR's counsel in responding to Rule 30(b)(6) questioning. Moreover, even assuming an entity's Rule 30(b)(6) designee knows all the underlying facts of a case—including those collected during the discovery process—he or she cannot be certain of which facts the railroad's legal counsel will rely on as supporting the alleged defense unless the lawyer prepares the witness to answer that question. So, when the 30(b)(6) witness is asked for all facts supporting a defense, he will essentially be parroting the lawyer's trial strategy for presenting evidence in favor of that defense.

A Rule 30(b)(6) notice requiring a corporate designee to "identify all facts, witnesses, or documents" supporting the railroad's defenses is so broad that it encompasses the organizational structure and contents of the lawyer's trial notebook and his or her opening and closing statements. A full and complete response to a request asking for all facts supporting a claim or defense would impermissibly disclose counsel's work product. Blackmore, 2022 WL 3718115, at *8; Tapia, 2022 WL 1604673, at *3; Puskarich BNSF Co., 2022 WL 611276, at *6; Fairview Health Services, 2021 WL 5087564, at *7; Funk, 2019 WL 858718, at *3.

b)   Overly Broad, Unduly Burdensome, and Duplicative

Even assuming Plaintiff's contention topics do not implicate the work product doctrine, they are nonetheless subject to review as overly broad, unduly burdensome, cumulative, and duplicative of other discovery. UP objects to the noticed deposition topics, arguing it has already responded to Interrogatory No. 15, which also required Union Pacific to disclose the facts, witnesses, or documents supporting its affirmative defenses.

It is widely accepted that Rule 30(b)(6) "contention topics" which require an opposing party "to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense" or claim are overbroad and improper. Rule 30(b)(6) topics which seek to elicit deposition testimony on all facts in support of a claim or contention are unduly burdensome, unwieldy, and disproportionate to the needs of the case. Blackmore, 2022 WL 3718115, at *7; Fairview Health Services at *6-7 (collecting cases); Inline Packaging, LLC v. Graphic Packaging International, Inc., 2018 WL 9919939, at *10 (D. Minn. 2018); In re Indep. Serv. Organizations Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996) (["T]o provide the information defendants seek would in effect require the Government to marshal all of its factual proof and then provide it to [the 30(b)(6) designate] so that she could respond to what are essentially a form of contention interrogatories. Aside from any issues of privilege, this would be highly inefficient and burdensome, rather than the most direct manner of securing relevant information.").

Courts have concluded that questioning on contention topics in a Rule 30(b)(6) deposition is burdensome, poses serious work product issues, and is not the proper vehicle for obtaining a summary of the opposing parties' allegations. Discovery under other rules is a more appropriate method for obtaining such information. Fidelity Management & Research Co. v. Actuate Corp., 275 F.R.D. 63, 65 (D. Mass. 2011). Where the party has supplemented its contention interrogatory responses, "there is no reason to also allow a Rule 30(b)(6) on the very same topic—to do so would be duplicative and unduly burdensome." Medtronic Inc. v. Edwards Lifesciences Corp., 2013 WL 12149252 (D. Minn, 2013). See also, Fidelity Management, 275 F.R.D. at 65 (noting interrogatories may be the best option to conducting contention discovery and if a deposition in needed, ordering a "more convenient, less burdensome and less expensive" Rule 31 deposition upon written questions rather than a Rule 30(b)(6)

deposition). Moreover, as to each of the defenses, UPRR's interrogatory response cites to experts as providing the basis of its claims. Requiring the railroad to provide a corporate deponent for these topics would be unnecessarily cumulative. It would be far more productive and accurate for the experts themselves to state their opinions and identify the facts upon which they relied in formulating their opinions, rather than having a corporate deponent provide that information. Funk, 2019 WL 858718, at *5.

UPRR argues the burden of providing a 30(b)(6) witness is wholly unnecessary because it previously answered the 30(b)(6) topics when it responded to Interrogatory No. 15. Upon review of the initial and supplemented interrogatory responses, (Filing No. 50), the court agrees. UPRR has adequately responded to the defenses at issue, now numbered as paragraphs 1-8 and 12 of the Amended Answer.[8]

Plaintiff argues the deposition is necessary "to narrow the triable issues in this case, to identify the facts, witnesses, and documents that will be presented at trial, and to bind UP to its testimony at trial." (Filing No. 39, at CM/ECF p. 1). "Plaintiff's discovery is critical to ensure Plaintiff is not ambushed at trial, to allow Plaintiff to identify the facts UP believes support its affirmative assertions." (Filing No. 39, at CM/ECF p. 2). Plaintiff argues that "[w]ithout a deposition of UP in accordance with Rule 30(b)(6), UP cannot be effectively bound by its affirmative assertions or responses to interrogatories at trial," (Filing No. 39, at CM/ECF p. 3), and the deposition is needed "to ensure Plaintiff will not be blind-sided by

---

[8] Plaintiff implicitly argues that UPRR's supplemental response to Interrogatory No. 15 is insufficiently specific. However, Plaintiff's contention interrogatories, which seek all facts supporting UPRR's defenses and require UPRR to provide a narrative account of its case, are overly broad and unduly burdensome on their face. Zubrod, 2016 WL 1752770, at *6.

additional facts, documents, or witnesses not identified in UP's answers to interrogatories." (Filing No. 39, at CM/ECF p. 7).

UPRR's interrogatory responses are binding on UPRR, and as the undersigned magistrate judge has previously held, by the time of the pretrial conference, the pretrial conference order must state the specific basis for the parties' respective claims and defenses.

> To avoid a moving target at trial and an associated trial by ambush, both parties' discovery responses must describe what the other allegedly did wrong, and those discovery responses will frame the statement of disputed issues listed in the pretrial conference order. A party's specific allegations of negligence which were requested but never disclosed in response to the opponent's discovery cannot be listed in the pretrial conference order.

Blackmore, 2022 WL 3718115, at *8. The same standard applies to the defenses of failure to mitigate and preexisting conditions/apportionment of damages. Moreover, witnesses and documents which were not previously disclosed cannot be listed in the pretrial conference order. This court has implemented and enforces these measures to avoid surprise at trial. A Rule 30(b)(6) deposition is not necessary for that purpose.

## CONCLUSION

The railroad's supplemental response to Interrogatory No. 15 was served in a timely manner, and it sufficiently responded to Plaintiff's request for the facts, documents, and witnesses supporting UPRR's defenses. The contention deposition topics within Plaintiff's 30(b)(6) notice are unduly burdensome, cumulative, and duplicative of the railroad's response to Interrogatory No. 15, and they encompass information protected by the work product doctrine.

21

Accordingly,

IT IS ORDERED:

1)   Union Pacific's motion for a protective order, asking the court to strike Plaintiff's Rule 30(b)(6) notice of deposition, (Filing No. 30), is granted.

2)   Plaintiff's motion to strike UPRR's "Undisclosed Evidence Proffered in Support of UP's Motion for Protective Order," (Filing No. 51), is denied.

3)   A status conference to discuss case progression, the parties' interest in settlement, and the trial and pretrial conference settings will be held with the undersigned magistrate judge on January 3, 2023 at 9:30 a.m. by telephone. Counsel shall use the conferencing instructions assigned to this case to participate in the conference. (Filing No. 9).

December 12, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge